IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| MERITAGE HOMES OF TEXAS, LLC, <br> *Plaintiff,* <br><br> v. <br><br> CITY OF CIBOLO, MAYOR STOSH BOYLE, COUNCILMEMBER REGGIE BONE, COUNCILMEMBER MARK, ALLEN AND COUNCILMEMBER JOEL HICKS, each in their official and individual capacities, <br> *Defendants.* | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> CIVIL ACTION NO. 5:21-cv-00755-FB |

**PLAINTIFF'S POST TRIAL BRIEF**

Meritage Homes of Texas, LLC ("Meritage") hereby files its Post Trial Brief and would respectfully show the Court as follows:

**I.      INTRODUCTION**

1.      The purpose of this Post Trial Brief is to address some of the issues the Court raised during the August 28, 2023 bench trial. Specifically, counsel for Defendants City of Cibolo, Mayor Stosh Boyle, Councilmember Reggie Bone, Councilmember Mark Allen and Councilmember Joel Hicks (collectively, the "City") referenced in closing case law that purportedly supported their position against Meritage's claims. The goal of this brief is to address the applicability of the cases and to articulate the standard the Court should apply. It should be noted that in neither the City's Proposed Findings of Fact and Conclusions of Law nor in closing argument did the City dispute the elements of Meritage's regulatory takings claim.

## II.     ARGUMENTS AND AUTHORITIES

A.     *Rational basis review is the proper standard to apply to Meritage's substantive due process claim*.

2.    During the City's closing argument, counsel cited to *County of Sacramento v. Lewis* and *Roa v. City of Denison* in arguing that the Court should apply the "shock the conscience" standard to Meritage's substantive due process claim. 523 U.S. 833 (1998); No. 4:18-CV-168-ALM-CAN, 2019 U.S. Dist. LEXIS 52925 (E.D. Tex. Feb. 18, 2019). Defendants argue that under the "shock the conscience" standard Meritage must carry the burden of showing that the City's actions were "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Conroe Creosoting Co. v. Montgomery Cty.*, 249 F.3d 337, 341 (5th Cir. 2001); *see also Lewis*, 523 U.S. at 847–54. This standard, however, is not the correct standard to apply to Meritage's substantive due process claim.

3.    In a land case context, the correct standard is rational basis review. *See FM Props. Operating Co. v. City of Austin,* 93 F.3d 167, 173–75 (5th Cir. 1996) (applying the rational basis review in a case involving the denial of a site plan application); *see also Mikeska v. City of Galveston*, 451 F.3d 376, 379–81 (5th Cir. 2006) (applying the rational basis review in a case involving the denial of permits). Considering this is a land use case involving City actions that apply broadly to several different tracts owned by Meritage and Lennar, and future homeowners in the City's ETJ, this Court should apply the rational basis review instead of the "shock the conscience" standard. *See Reyes v. North Texas Tollway Authority,* 861 F.3d 558, 562 (5th Cir. 2017).

4.    The Supreme Court recognized the "shocks the conscience" standard in *Rochin v. California*, 342 U.S. 165, 72 S. Ct. 205, 96 L.Ed. 183 (1952). There, the Court found a violation of Rochin's substantive due process rights after police officers who had arrested Rochin ordered

doctors to pump Rochin's stomach to induce him to vomit two capsules of morphine that he had previously swallowed. *Id.* at 166. The Court determined that the state's conduct "shock[ed] the conscience," and therefore violated Rochin's due process rights. *Id.* at 172. Later, in *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S. Ct. 1708, 140 L.Ed.2d 1043 (1998), the Supreme Court explained that substantive due process is violated by executive action "only when it 'can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.'" *Id.* at 847. The *Lewis* Court found that a police officer's deliberate indifference during a high-speed chase that caused the death of a motorcyclist did not "shock the conscience," but left open the possibility that unauthorized law enforcement behavior in other contexts might "shock the conscience" and give rise to § 1983 liability. *Id.* at 836-37, 850, 854.

5. Conduct sufficient to shock the conscience for substantive due process purposes has been described in several different ways. It has been described as conduct that "violates the decencies of civilized conduct"; conduct that is "so brutal and offensive that it [does] not comport with traditional ideas of fair play and decency"; conduct that "interferes with rights implicit in the concept of ordered liberty"; and conduct that "is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Lewis*, 523 U.S. at 846-47 & n.8 (citation and internal quotation marks omitted). As the Court noted, many cases that have applied the standard have involved the use of extreme force by police officers or other state actors. *See Checki v. Webb*, 785 F.2d 534, 535-36, 538 (5th Cir. 1986) (state trooper intentionally used his vehicle to terrorize motorist and passenger); *Shillingford v. Holmes*, 634 F.2d 263, 264-65 (5th Cir. 1981) (police officer intentionally struck tourist because he was photographing the police officer and fellow officers apprehending a boy on the street during a Mardi Gras parade), *abrogated on other grounds by Valencia v. Wiggins*, 981 F.2d 1440 (5th Cir. 1993); *see also Neal ex rel. Neal v. Fulton Cnty.*

*Bd. of Educ.*, 229 F.3d 1069, 1071, 1075-76 (11th Cir. 2000) (student blinded in one eye when a coach intentionally hit him in the head with a metal weight); *Rogers v. City of Little Rock, Ark.*, 152 F.3d 790, 797 (8th Cir. 1998) (rape of a woman at her house by a police officer after he stopped her for a traffic violation); *Hemphill v. Schott*, 141 F.3d 412, 418-19 (2d Cir. 1998) (police officer provided assistance to a third party in shooting the plaintiff).

6. The facts of this case fall more in line with the facts in *FM Props. Operating Co. v. City of Austin* and *Mikeska v. City of Galveston*, where the Fifth Circuit applied the rational basis review test within a land use context. *See* 93 F.3d 167, 173–75 (5th Cir. 1996) (applying rational basis review to a due process challenge to the application of a city's zoning ordinance); *see also* 451 F.3d 376, 379–81 (5th Cir. 2006) (applying rational basis review to a city's refusal to reconnect utilities to a number of homes allegedly condemned under state law). As previously addressed by Meritage, this Court should look to *Mikeska* and apply that court's analysis to this case.

7. In *Mikeska*, the plaintiffs brought suit against the City of Galveston due to its refusal to grant permits for reconnection of their home's utility services. *Mikeska*, 451 F.3d at 378. Following the denial of the plaintiffs' requests, the plaintiffs filed a lawsuit averring that the City violated plaintiff's substantive due process and equal protection rights in violation of 42 U.S.C. § 1983. *Id*. at 379. Plaintiffs sought both a preliminary injunction to force the City to allow the restoration of the utility services and compensatory damages. *Id.* at 379. After the district court granted the preliminary injunction, the plaintiffs pursued their substantive due process and equal protection claims for money damages under 42 U.S.C. § 1983. *Id*. In analyzing the plaintiffs' substantive due process claim, the Fifth Circuit found that the plaintiffs must cross two hurdles: (1) must allege a deprivation of a constitutionally protected right; and (2) whether the government

action was "rationally related to a legitimate government interest." *Id*. (quoting *FM Props*., 93 F.3d at 174).

8.     Here, Meritage's property is not located within the Cibolo corporate limits. In *Mikeska*, the Fifth Circuit found the rational basis test requires not only a legitimate state interest, but also that the government action is rationally related to furthering that interest. There was a legitimate state interest at stake in that case—the protection of public access to the public beach—but, the government failed to provide any rational reason why refusing to reconnect utilities to houses found on a public beach furthered the end of protecting public access to public beaches. *Id.* at 300.

9.     The City's witnesses testified at trial that the City knew that GVSUD had sole regulatory authority under Texas law to decide when and how sanitary sewer would be provided to Legendary Trails. All of the witnesses acknowledged they were unaware of a pump and haul accident or spill ever occurring. The City Council denied multiple plat applications for developments in the ETJ that would not utilize pump and haul. In the extremely unlikely event of a sanitary sewer event, the witnesses all agreed there would be no adverse impact to the health, safety or welfare of Cibolo residents. The City cannot cite to a valid legitimate state interest for denying Meritage's plat applications or show that its plat denials furthered a legitimate state interest.

10.    Like the plaintiff in *Mikeska*, Meritage has pursued this substantive due process claim under 42 U.S.C. § 1983 as a result of the actions taken by the City Council. In particular, Meritage brought this action after the City Council denied final plats due to the issues it had with the GVSUD sewer line construction and/or the use of pump and haul. Further like *Mikeska*, this Court granted Meritage's preliminary injunction to force the City to grant Meritage's final plat, and

regardless, Meritage pursued damages for the City's violation of Meritage's substantive due process and equal protection rights. Accordingly, this Court should follow *Mikeska* and apply the rational basis review to Meritage's substantive due process claim.

        B.      *The City's actions also meet the shock the conscience standard*.

        11.      The City's decision to deny all plats in the ETJ based upon GVSUD's sanitary sewer policies is different than the physical harm inflicted on individuals by governmental actors under the shock the conscious standard. *Lewis*, 523 U.S. at 854-55. But the City's continued denials of plats in the ETJ in direct contravention of this Court's mandatory injunction order is so egregious and outrageous to meet this test. The City's witnesses acknowledged that City politicians objected to growth in the ETJ and smaller lot developments. In addition, there was antagonistic litigation between the City and GVSUD about service areas. The City Council continually denied plat applications that the City engineer determined complied with all City subdivision ordinance standards.

        12.      At the October 26, 2021 City Council meeting, Meritage's units' final plat was approved by a 4-3 vote while Lennar Homes' Cibolo Farms Unit 1 preliminary plat was unanimously denied. Meritage's plat was only approved because this court ruled that Meritage had a clear right to an injunction which would have been granted if the City did not approve. If anything, Lennar's plat was better positioned because the homebuilder had agreed that it would not use pump and haul. The City's witnesses testified that Meritage's plat was "reluctantly" approved due to this Court's order and Lennar's plat was denied because it was not the subject of a court order. Yet three City Council members still voted not to approve Meritage's plats, thus showing the animus towards Meritage and disregard of its established legal rights.

        13.      Similar to Meritage, the City only agreed to approve Lennar's plat after federal court litigation was filed against the City. Municipalities often illegally deny development permits under

the assumption that they will face no legal consequences. Developers usually forego seeking damages and attorneys fees if the city ultimately approves the permit application that should have been approved in the first instances. The City made a political decision to continually deny fully compliant plats for clearly illegal reasons.

      C.    *The City's actions also constitute an unconstitutional regulatory taking*.

14. Significantly, the City did not cite to case law in its Proposed Findings of Fact and Conclusions of Law nor in closing to controvert Meritage's regulatory takings cause of action. Meritage's claim is based on an unreasonable interference with its right to use and enjoy its property under the *Penn Central* factors. *Penn Central Transp. Co. v. New York City*, 438 US 104 (1978).

15. A *Penn Central* takings claim may arise when a governmental entity has denied a landowner approval to develop his property. *See City of Lorena v. BMTP Holdings, L.P.*, 409 S.W.3d 634, 644-46 (Tex. 2013) (applying *Penn Central* factors to developer's regulatory takings claim that city approved landowner's subdivision plat and subsequently enforced a moratorium against the property, to town's rejection of landowner's development plan). In *Penn Central*, the United States Supreme Court identified three key factors to guide the analysis: (1) the economic impact on the claimant; (2) the extent of interference with the claimant's investment-backed expectations; and (3) the character of the government's action. *City of Lorena*, 409 S.W.3d at 644 (citing *Penn Cent.*, 438 U.S. at 124). In addition to these factors, courts should consider all surrounding circumstances. *See id.* The extent of the governmental intrusion may be a question for the trier of fact, but whether the facts alleged constitute a taking is a question of law.

16. The City's numerous plat denials clearly meet the test. First, Meritage's Jeffrey Flach testified to the general significant adverse impact to Meritage resulting from the City's actions. In addition, he testified that Meritage suffered actual damages in the amount of

$65,923.33. The City did not controvert Meritage's evidence that its purchase and development of its property was based on the reasonable investment-backed expectation that the City would approve subsequent plats based upon the approved land study, preliminary plat and construction plans and the UDC in effect at that time. Finally, the malevolent and egregious character of the City's plat denials is described in the due process section above. Meritage is entitled to damages and attorney's fees under §§ 1983 and 1988 related to its unconstitutional regulatory takings claim.

       D.     *Monell v. Dep't of Social Services of New York has no application to this case.*

       17.     The City also referred to *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 691 (1978), during closing arguments. *Monell* stands for the position that municipalities that subject individuals to constitutional deprivations through the implementation of unconstitutional policies or customs are liable in damages under § 1983. The Supreme Court found that a municipality causes a constitutional deprivation "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id*. at 694. The Supreme Court also held that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Id*.

       18.     Meritage sought to impose liability against all of the Defendants, including the individual councilmembers and the mayor (in their official capacity), for the wrongful denials of Meritage's final plats. Meritage is seeking liability and damages against the City. Further, although the councilmembers and mayor wrongfully voted to deny Meritage's final plats, it goes without saying that the City caused the constitutional deprivation that is actionable under § 1983. Meritage is not claiming the City is responsible under respondeat superior liability and the injury that was inflicted onto Meritage was not solely done by the City's employees or agents. As such, the City cannot use the Supreme Court's holding in *Monell* to escape liability for the City's

constitutional violations. Simply put, the holdings in *Monell* do not support any of the City's defenses in this case and have no application.

  E. *The Court raised questions about attorneys' fees*.

  19. Although the court has not ruled on the issue of awarding attorneys' fees under 42 USC §§ 1983 and 1988 the court raised questions at trial regarding the timing of incurring these fees. A chronological summary of this issue is as follows:

> July 2021 – October 2021: Approximate fees and expenses through city council vote to approve Unit 1 final plat: $156,889.70.
>
> November 2021 – December 2021: Approximate fees and expenses related to Unit 1 final plat recordation: $9,768.74.
>
> March 2022: City council denies Unit 4 preliminary plat and Unit 2 final plat.
>
> March 2022 – June 2022: Approximate fees for preparation and filing of Second Amended Petition and discovery: $19,382.00.
>
> July 28, 2022: City outright rejects Meritage's Offer of Settlement as follows: (1) City approval of Unit 4 preliminary plat and Unit 2 final plat without sanitary sewer conditions; (2) Estimated damages due to plat denial; (3) Expert witness fees of $13,195.00; and (4) Meritage's attorneys' fees and expenses in the total amount of $186,271.30. No counteroffer received.
>
> July 2022 – March 2023: Approximate fees and expenses related to pre-trial hearings, discovery and mediation: $89,403.30.
>
> February 9, 2023: Unsuccessful mediation conducted.
>
> May 2023: Approximate fees and expenses related to Unit 2 final plat recordation: $3,361.00.
>
> July 2023 – August 2023: Approximate fees and expenses related to trial preparation and trial attendance: $104,913.64.

The total of these attorneys' fees and expenses through the end of August 2023 related to this litigation is approximately $383,718.00. There will be additional post-trial and possibly court of appeals fees to be incurred as well. David Cupit of Cude Engineering testified that his expert

witness fees were $28,000.00. In addition, Meritage introduced testimony that its damages due to the City's denial of the Units 1 and 2 final plats totaled $66,348.00.

**WHEREFORE, PREMISES CONSIDERED** Plaintiff Meritage Homes of Texas, LLC requests that the Court enter judgment in its favor, granting the relief it seeks, and for such other and further relief as it may show itself justly entitled.

Respectfully submitted,

WINSTEAD PC
500 Winstead Building
2728 N. Harwood Street
Dallas, Texas 75201
(214) 745-5745 – Phone
(214) 745-5390 – Fax

By: /s/ *Arthur J. Anderson*
Arthur J. Anderson
SBN: 01165957
aanderson@winstead.com
James G. Ruiz
SBN: 17385860
jruiz@winstead.com

**ATTORNEYS FOR PLAINTIFF**

## **CERTIFICATE OF SERVICE**

      By signature below, I certify that a true and correct copy of this Plaintiff's Trial Brief has been served by electronic service to the following counsel for Defendants on this 14th day of September, 2023:

Charles S. Frigerio, Esq.
Hector X. Saenz, Esq.
Law Offices of Charles S. Frigerio
A Professional Corporation
Riverview Towers
111 Soledad, Suite 465
San Antonio, Texas 78205

                                  /s/ *James G. Ruiz*
                                  James G. Ruiz